LIBERTY MERCANTILE CO. *v.* ALLEN *et al.*

[98 So. 774. No. 23867.]

(Division A. Feb. 4, 1924.)

1. MORTGAGES. *Mortgage held to secure only indebtedness incurred during year of execution.*

    A mortgage provided in one clause for the security of the present and future indebtedness of the mortgagor without regard to date. In another clause following it provided "that this deed is made and intended to secure any advances on account of the crop of 1918 made after the maturity thereof and not mentioned

herein, or any indebtedness of the first party assumed or paid by third party." *Held*, said mortgage only secured the indebtedness of the mortgagor incurred during the year of the excution of said mortgage.

2. APPEAL AND ERROR. *Discretion of chancery court in taxing costs rarely disturbed.*

The chancery court has such broad powers under section 956, Code 1906 (section 665, Hemingway's Code), providing that said court shall have power to tax either party with the costs or divide the same between the parties as may appear equitable, that it must be an exceptional case for this court to reverse a decree on account of the taxation of the costs.

APPEAL from chancery court of Amite county.

HON. R. W. CUTRER, Chancellor.

Suit by the Liberty Mercantile Company against Lee Allen and Jerome Ford. From the decree rendered, plaintiff appeals, and defendant Ford cross-appeals. Affirmed.

*George Butler* and *C. T. Gordon,* for appellant.

It clearly appears from the proof in this case that the appellant relied upon its 1918 mortgage to secure the indebtedness advanced during 1919, and that this arrangement was agreed to by the mortgagor, Lee Allen, and having so relied upon this deed of trust, and under its terms, they come clearly within the rule as laid down in *Mechanics Bank* v. *First National Bank,* 117 Miss. 437; *Witczinski* v. *Everman et al.,* 51 Miss. 841.

It must be further noted that this deed of trust, as executed by Lee Allen to the appellant, was a matter of record on January 15, 1920, when the appellee took its deed of trust, and was notice to appellee, and if the appellee had used any precaution and made inquiry it would have learned of the indebtedness then due the appellant under its 1918 deed.

From section 2307 and 2316 of Hemingway's Code it would appear that the appellant had done all that could

be required of him that he might discover if there was any other outstanding mortgage on this land. It would further appear that the appellee's mortgage was never recorded, as directed by law. He will argue that this was no fault on his part, and that may be true, yet, nevertheless, under the statutes above referred to he is protected and the clerk must answer to him. The appellee is entitled to relief as against the clerk. He was and is the party injured by the failure of the clerk to record his deed of trust. *Camp et al.* v. *Celtic Land & Improvement Company,* 129 Miss. 417.

The record shows that the appellant did use the precaution to look up these records. The records further show that the appellee did not, and had he done so he would have been advised of the dealings between Lee Allen and the appellant, and of the deed of trust contract between them, and by the use of this precaution would have been protected, and surely he should be the one to pay for his failure to use precaution.

*J. B. Sternberger,* for appellees.

This case presents two legal questions for the Court's decision. 1. Did the lower court err in decreeing that the last clause in appellant's 1918 deed of trust limit the advancing clause in the first part of the deed to advances on account of the crop of 1918 in the last part? This last clause reads: "It is further distinctly understood and agreed between the parties aforesaid that this deed is made and intended to secure any advances on account of the crop of 1918 made after the maturity thereof, and not mentioned herein."

This clause was ample, therefore, to cover all future advances, but for the limiting later clause restricting same to advances made on account of the crop of 1918. *Witczinski* v. *Everman,* 51 Miss. 841, might then have been well invoked to sustain the post-maturity advances

for which appellant contends. Courts do not make contracts for persons, and when they make them they must be subjected to well-settled rules of construction. Ignorance here does not excuse. This branch of the case is controlled, I submit, by *Gray* v. *Helm*, 60 Miss. 131. See, also, *Mechanics' Bank* v. *First National Bank of McComb City*, 117 Miss. 437.

2. To the contention of appellant mercantile company that it is not affected with constructive notice of Ford's 1920 deed of trust, because not properly indexed and recorded, it having been indexed and recorded in the chattel mortgage, instead of the land mortgage records, it is sufficient to say that the evidence is that Ford mailed his deed from Magnolia to the clerk at Liberty for recordation, and the clerk filed same, but by mistake indexed and recorded it in the chattel instead of the land mortgage records. To be sure this was in plain violation of section 2313, Hemingway's Code, which provides that: "An instrument embracing land shall not be recorded in the chattel record book." Now it is common for such deeds to embrace both lands and chattels, as is the case here. And it is just as common for them to be indexed and recorded in the "records of mortgages and deed of trust on land," as is provided in sections 2310, and 2311 of Hemingway's Code. Section 2292 provides that these instruments "shall take effect as to all subsequent purchasers for a valuable consideration without notice, and as to all creditors, only from the time when delivered to the clerk to be recorded." So when Ford delivered the deed to the clerk he had done all the law required of him, and any mistake in indexing and recording causing damage to another the clerk is liable for, and is plainly provided for in sections 2311 and 2316, Hemingway's Code. This question was before this court in *Mangold* v. *Barlow*, 61 Miss. 593, and the court there ranged itself with the current of authority, holding that: "The grantee not required to record the instrument, or to see that the

officer does his duty. All that is imposed on the grantee is that the instrument shall be acknowledged or proved and lodged with the clerk of the chancery court of the proper county. There his duty ends. That done, his deed is not to be void as to subsequent purchasers or creditors.''

3. The trustee's deed to Ford to the land in question is *prima-facie* evidence that the terms of the deed, and the law as to notice, were all complied with in making the sale. No evidence was offered to rebut this presumption. *Enochs* v. *Miller,* 60 Miss. 19, and *McCaughn* v. *Young,* 85 Miss. 277.

*George Butler* and *C. T. Gordon,* for appellant in reply.

It is our contention that the equities of the situation are with the Liberty Mercantile Company. The deed of trust in favor of the Liberty Mercantile Company, dated January 16, 1918, recites that the grantor expects the Liberty Mercantile Company ''To advance him money and sell him supplies and merchandise during the year 1918, not to exceed four hundred dollars . . .; and whereas said party of the first part has agreed to secure the payment of said indebtedness, as also any of the amounts that may be advanced as aforesaid, and not mentioned herein, and any and all other indebtedness that is, or may become due during the life of this contract.''

The life of this contract, in so far as it concerned the indebtedness evidenced by the promissory note, was six years from the maturity of the note, and was, so far as it concerned the indebtedness evidenced by open account, three years from the date the indebtedness became due. The Mercantile Company was guilty of no negligence, and was diligent in endeavors to ascertain and protect its rights. Before the renewal deed of trust of 1920 was given, that company investigated the records by looking at the proper index, and found no deed of trust in favor of appellee Ford.

On the other hand, appellee Ford, when he took his deed of trust on January 16, 1920, made absolutely no investigation of the record to determine whether there was a prior deed of trust against this land. The slightest investigation would have disclosed that there was an unsatisfied deed of trust against this land in favor of the Liberty Mercantile Company. Ford is conclusively presumed to have known of the existence of that deed of trust.

It is thoroughly well established that a vendee or mortgagee of lands claiming to be an innocent purchaser for value, without notice, is presumed to know the contents of a deed in his grantor's chain of title. *Baldwyn* v. *Anderson,* 103 Miss. 462; *Parker* v. *Foy,* 43 Miss. 260; *Deeson* v. *Taylor,* 53 Miss. 697.

It is also thoroughly settled that if the recitals of the deed are sufficient to put a reasonably prudent man on inquiry, he is bound at his peril to follow up that inquiry. In *Parker* v. *Foy,* 43 Miss. 260, it is said: "As to the character of notice, the rule seems to be pretty well established that whatever is enough to excite attention, or put a party on inquiry, is notice of everything to which such inquiry might have led. Sufficient information to lead to the knowledge of a fact shall be sufficient to charge him with the knowledge of that fact."

Opposing counsel rely upon the case of *Gray* v. *Helm,* 60 Miss. 131, but it is respectfully submitted that the deed of trust under review in that case is materially different.

Argued orally by *Geo. Butler,* for appellant.

ANDERSON, J., delivered the opinion of the court.

Appellant, Liberty Mercantile Company, a corporation, filed its bill in the chancery court of Amite county against appellees Lee Allen and Jerome Ford to estab-

lish a mortgage executed to it by appellee Allen as a prior lien to that of a mortgage subsequently executed by appellee Allen to appellee Ford. There was a trial on bill, answers, cross-bill of appellee Ford, answer thereto of cross-defendant, and proof, resulting in a decree denying appellant the relief sought by its bill and granting appellee Ford the relief prayed for in his cross-bill, but taxing the latter with the cost of the cause, from which decree appellant appeals and appellee Ford cross-appeals.

The question is one of priority of the lien of mortgages. It is whether appellant's mortgage executed in January, 1918, is prior as to the indebtedness incurred thereunder during the year 1919 to the mortgage of appellee Ford executed in January, 1920. The decision of the question turns upon the meaning of the language used in appellant's mortgage describing the indebtedness it was given to secure. The language of the mortgage in question follows:

"Witnesseth: That whereas Lee Allen and wife, party of the first part is indebted to the party of the third part in the sum of four hundred eighty-eight and seventy hundredths dollars on their promissory note of even date, and whereas said party of the first part expects said party of the third part to advance him money, and sell him supplies and merchandise during the year 1918, not to exceed four hundred dollars at such prices as may be agreed upon at the time of delivery, or at the usual and customary credit prices in the town of Liberty, Mississippi; and whereas said party of the first part has agreed to secure the payment of said indebtedness, as also any further amounts that may be advanced as aforesaid and not mentioned herein, and any and all other indebtedness that is or may become due during the life of this contract. . . . It is further distinctly understood and agreed between the parties aforesaid, that this deed is made and intended to secure any advances on account

of the crop of 1918 made after the maturity thereof, and not mentioned herein, or any indebtedness of the first party assumed or paid by third party. . . ."

Appellant contends that the provisions of the mortgage in question are broad enough to cover not only the indebtedness of the mortgagor to the mortgagee for the year 1918, but for the years following "during the life of the contract."

Appellee Ford contends, on the other hand, that said stipulation was only intended to secure the mortgagor's indebtedness for the year 1918, and to sustain that position relies principally on the case of *Gray* v. *Helm,* 60 Miss. 131. The mortgage in that case in its first clause broadly covered all future advances by the mortgagee to the mortgagor of whatever description and without regard to their date. This clause, however, was followed by another in this language:

"It is further distinctly understood and agreed between the parties aforesaid that this deed is made and intended to secure any advances on account of the crop of 1880, made after the maturity thereof and not mentioned therein."

The court said that the first clause secured all future advances without regard to their date and standing alone would bring the case fairly within the principle announced in *Witczinski* v. *Everman,* 51 Miss. 841, but held that the first clause was modified and limited by the other clause which was intended to secure alone advances made to the mortgagor by the mortgagee "on account of the crop of 1880." The first clause in the mortgage in the present case is likewise broad enough to cover not only the indebtedness of the mortgagor for the year 1918 but any further indebtedness "during the life of this contract." The question is whether that language is modified and limited by the last clause in which it is provided that said mortgage was "intended to secure any advances on account of the crop of 1918 after the ma-

turity thereof and not mentioned herein, or any indebtedness of the first party assumed or paid by third party." Taking the mortgage as a whole, there appears to have been one outstanding purpose of the parties, and that was that the mortgage was given to enable the mortgagor to make a crop during the year 1918. The last clause limits the indebtedness to be secured to that incurred during the year 1918 for the purpose of enabling the mortgagor to make a crop, whether such indebtedness should be incurred before or after the maturity of the crop; and such further indebtedness as the mortgagee might pay for the mortgagor to others in order to enable the mortgagor to enter upon the making of said crop of 1918. Although the language of the mortgage in question in the present case is somewhat different from that involved in Gray v. Helm, supra, we are unable to see any substantial difference in their meaning. By the phrase "during the life of this contract" the parties, we think, meant the year 1918. We are of opinion that appellant's mortgage only covered the indebtedness incurred by the mortgagee during the year 1918 and as to any other indebtedness the mortgage of appellee Ford is prior.

The cross-appeal of appellee Ford only involves the cost of the cause, his contention being that the court erred in taxing him with the costs because he had tendered to appellant both before and after appellant filed its bill the small balance due appellant under its mortgage for the year 1918; that this tender was a legal tender, and therefore the court should not have taxed him with the costs. Chancery courts are given such broad powers as to the taxation of costs by section 956, Code of 1906 (section 665, Hemingway's Code), that we are unwilling to disturb the decree as to the costs. That statute provides that the chancery court shall have power to tax either party with the costs or divide the same between the parties as may appear equitable. Even though it be true that appellee Ford made a tender of the balance due

appellant on account of the year 1918 and that such tender was sufficient to prevent the recovery of costs ordinarily, still the decree taxing the costs in this case may have been justified by said statute; therefore we decline to disturb it.

*Affirmed on direct and cross appeals.*