NORTH v. J. W. McCLINTOCK, INC.

In Banc. Feb. 13, 1950.

No. 37263 (44 So. (2d) 412)

290

Frank T. Williams, L. G. North, Sr., and Satterfield, Ewing & Hedgepeth, for appellant.

**Montgomery & Varnado,** for appellee.

**Roberds, J.**

On September 15, 1947, W. M. Harper and his wife Beola Harper executed to McClintock, the appellee, a corporation, a note for the principal sum of $500, due December 1, 1947, bearing 6% interest from date until paid. The makers of the note also executed on the same day a deed of trust to T. R. Jackson, trustee, for the benefit of McClintock covering a lot and improvements in Belzoni, Mississippi, to secure payment of said note. The trust deed contained a provision that ". . . all further and future advances, cash, merchandise, or other things of value that may be made to the grantor or grantors herein during the life of this contract are hereby secured as the principal of this obligation."

On December 27, 1847, the Harpers paid the sum of $245.67 on the $500.00 debt.

On April 5, 1948, the Harpers executed a deed of trust to Mrs. A. M. North on the same lot to secure payment of their promissory note of the same date to Mrs. North

for the sum of $5000.00, due and payable May 1, 1948, bearing 6% interest per annum from date until paid.

Also, on the same date, to wit: April 5, the Harpers executed to Mrs. North a quitclaim deed to the property.

The North trust deed was duly recorded the day executed, but the quitclaim deed appears to have been recorded some time later.

"On or about" April 28, 1948, McClintock, Inc., had an oral agreement with the Harpers under which it agreed to lend the Harpers an additional sum of $650.00, with which W. M. Harper expected to settle a claim of one Mobile Robinson against him, growing out of the sale by Harper to Robinson of a stolen automobile. The Harpers on April 28, 1948, executed to McClintock, Inc., a promissory note for $650.00, due September 1, 1948, bearing 6% interest per annum until paid, but instead of dating the note April 28 it was dated back to December 2, 1947. No money was paid by McClintock as a result of this note transaction until October 20, 1948, when $650.00 was deposited in a bank by McClintock to the credit of Mobile Robinson.

In the meantime, and on September 21, the trustee began advertisement of the land for sale under the McClintock trust deed. The sale was had October 23, at which McClintock purchased for the sum of $650.00 according to the trustee's deed.

Mrs. North offered to pay McClintock his debt and costs except the $650.00 debt. That was refused, and she then filed the bill in this cause on October 21, renewing the tender and praying that the McClintock trust deed be cancelled as security for the $650.00 note and that her rights to the property be declared a superior claim as to that note. The Chancellor dismissed the bill.

A number of questions are raised on this appeal and the members of the court are not in accord as to some of them. However, with the exception of one member of the court, we are agreed that the Chancellor was mani-

festly in error in holding, if he did so hold, (there being no opinion in the record), that McClintock, when he had the agreement with Harper and took the Harper note on April 28, did not have actual knowledge of the existence of the North trust deed and quitclaim deed. If McClintock had such actual knowledge, the Chancellor was in error in dismissing the bill, as shown later herein.

This is the evidence as to whether McClintock had such actual knowledge: The sworn bill charged McClintock did have such actual knowledge. McClintock's answer said, "Defendant admits that he had constructive notice of the aforesaid deed of trust and deed to A. M. North by virtue of the recordation of same and that he acquired actual notice thereof shortly after the same were recorded". Now, McClintock took his $650.00 note April 28. The North trust deed was recorded April 5, twenty-three days prior to the $650.00 note transaction. The time of the "actual notice" to McClintock, admitted in his answer, might well be assumed to be within that twenty-three days.

As a witness McClintock was asked if he knew of the existence of the North trust deed and quitclaim deed when he took the $650.00 note, and he replied, "No, sir, I didn't". When reminded of the admission in his answer he replied "I knew it a short time later". He was then asked "You say you didn't know about the quitclaim deed to Mr. North", and he replied "No, sir". That was all the testimony on behalf of McClintock on that question. Mr. L. G. North was and is the husband of Mrs. A. M. North. He had been engaged to represent as an attorney W. M. Harper on some seventeen charges of thefts of automobiles. That was the reason and occasion for execution by Harper of the North trust deed and deed. Mr. L. G. North testified as to the fact under consideration. He said that after execution of the North papers and before April 28 McClintock came to his office and they had a detailed discussion of the Harper situa-

tion; that Harper was in jail at the time; McClintock wanted to know how much money it would take to pay the attorney's fees, which were the consideration for execution of the North papers; that he expressly told McClintock Mrs. North had the deed of trust and quitclaim deed, and he showed them to McClintock, and that McClintock then said to him, "You would take less than the amount shown in yours if we pay it off", and that North said, "Yes, I will take less than that"; that he knew the date was between April 5th and April 15th. Now North gave that evidence after McClintock had testified as we have heretofore set out. McClintock was not again placed on the stand. He did not deny what North said, except in the general way we have indicated above. Now in view of the admission in the answer of McClintock and the vagueness of his testimony in connection with his answer as to the time he actually knew of the existence of the North papers, as against the positive evidence of North of the time and place and details of the interview before April 28th, and the failure of McClintock to introduce evidence contradicting such positive, detailed evidence, a finding that McClintock did not, by April 28th, have actual knowledge of the North papers is, in our opinion, manifestly against the weight of the evidence on that question.

██ █ As to the applicable law, it is said in 36 Am. Jur. p. 808, Par. 234, "The greater array of authority, however, is found on the side of the doctrine that advances made after notice of subsequent interests do not have priority over such interests". The rule is re-announced in 45 Am. Jur. p. 473, Par. 96. The rule is stated in 59 C. J. S., Mortgages, Section 230, page 299, in this language: "In accordance with the general rule, after notice of the attaching of a junior lien, the senior mortgagee ordinarily will not be protected in making further advances under his mortgage given to secure such advances, at least, where he was under no binding engagement to make such advances." These pronounce-

ments have reference to actual notice. Neither Gray v. Helm, 60 Miss. 131, nor Liberty Mercantile Co. v. Allen, 134 Miss. 354, 98 So. 774, announces a different rule. In both cases the mortgage contract obligated the mortgagees to make future advances. However, in the case at bar the provision for advances was a blanket provision. It in no way bound the mortgagee to advance further money. Such advancement was purely optional with McClintock. Indeed, when the trust deed was executed by the Harpers on September 15, 1947, the occasion for advancing future money had not arisen. Neither party had it in mind. McClintock testified to that. The occasion for such advancement came up later. Indeed, the agreement to do so, and apparently the first notice McClintock had that Harper wanted him to do so, was when they had the oral agreement April 28, 1948, some five months after the maturity date of the amount stated in the trust deed from Harper to McClintock. We think the announced rule is just and equitable. The only amount named in the McClintock trust deed was $500.00. McClintock was not obligated to advance any more. If he then had actual knowledge Harper had given another a trust deed on the same property, he should have declined to make further advances, but having done so, his security became second to the lien he knew was on the mortgaged property. We adopt the stated rule as being equitable and just. It is uncertain from the report of the case of Witczinski v. Everman, 51 Miss. 841, whether it announces a different rule from the one here adopted. We have not been able to find the original record.

The rule is especially applicable, and its effect is greatly strengthened in this case, by the fact that in addition to the existence of the North trust deed the Harpers had also executed to Mrs. North a deed to the property covered by the prior trust deed, and when McClintock agreed to furn'sh the $650.00 Harper had no title whatever to the security. In view of the stated rule as between

mortgagees, we pretermit determination of the effect of the deed had there been no second trust deed. If McClintock had actual knowledge of the second trust deed when he agreed to advance the $650.00 then his security therefor is second to the North deed of trust.

 We remand the case so that it may be determined whether or not McClintock, when he had his agreement with Harper April 28 and took Harper's note for $650.00, had actual knowledge of the existence of the North trust deed or the quitclaim deed. If so, the North claim is prior to McClintock's security for the $650.00 indebtedness; if McClintock did not then have such actual knowledge, then his claim upon the mortgaged property to secure said indebtedness is superior to the claim of Mrs. North.

Reversed and remanded.

**Lee, J.,** took no part in the decision of this case.

**Alexander, J.** (dissenting).

The majority opinion adopts a rule which concededly is not unjust and which is in line with the majority of the courts. The trouble here is that it is out of accord with Witczinski v. Everman, 51 Miss. 841. This case has been cited as authority in cases which have followed it. It is cited several times in Jones on Mortgages, 8th Edition, as an example of the minority rule, and I think this treatise correctly interprets it as holding that a mortgage to secure future advances includes any advances made by the mortgagee during the life of the mortgage, whether he was obligated thereunto or not. It also accurately interprets the decision as making immaterial whether the first mortgagee has actual knowledge of the execution of a junior incumbrance or a subsequent sale of the mortgage property. Jones on Mortgages, 8th Edition, Sections 447, 452, 454, 455, 457.

If the Court desires to adopt the rule announced, it seems to me that there should be a forthright overruling of the Witczinski case. I would, therefore, be in a position to concur in the result reached were it not for mv conviction that it involves a departure from our former decision upon the subject, and since I do not believe that the Witczinski case ought to be overruled, but that this has at least impliedly been done, I cannot consistently join in the majority opinion.

The effect of our holding is that although a prior mortgagee has taken security for the making of future advances and retained both such security and the right to make such advances, a junior incumbrance may at will cut off such right and take over the security as a prior lien. As stated in the Witczinski case, the junior mortgagee "is duly advised of the right of the (prior) mortgagee by the terms of the mortgage to hold the mortgage property as security to him for such indebtedness as *may* accrue to him". It is further stated that "if it contains enough to show a contract that it is to stand as a security to the mortgagee for such indebtedness as *may* arise from future dealings between the parties, it is sufficient to put a purchaser or incumbrancer on inquiry, and, if he fails to make it in the proper quarter, he cannot claim protection as a bona fide purchaser." (Emphasis ours).

**McGehee, C. J.** (specially concurring).

I concur in the result reached in this case, and especially for the reason that if the junior mortgagee had advised the senior mortgagee of the fact that he had not only taken the junior mortgage, but also had obtained a quitclaim deed from the mortgagor to the property in question before the $650 was advanced to the mortgagor by the senior mortgagee, the property did not become subject to the senior mortgage for the subsequent advance of

the $650 since the mortgagor had parted with all right, title and interest in the property at the time he obtained the additional advance of $650 from the senior mortgagee. He could not further encumber the property by obtaining an additional advance as provided for under the senior mortgage, for the reason that he had no right to encumber property, the title to which he had become divested, where such fact was known to the senior mortgagee thereof at the time he made the further advancement.

I think that the case of Witczinski v. Everman, 51 Miss. 841, is distinguishable from the case at bar on its facts, and, in my opinion, is not controlling in the instant case.