238 P.2d 1151

**GOSS v. IVERSON et al.**

**No. 7786.**

Supreme Court of Idaho.

Dec. 22, 1951.

Bissell & Bird and Cecil D. Hobdey, all of Gooding, for appellant.

James, Shaw & James, Gooding, for respondent.

TAYLOR, Justice.

In March, 1949, the plaintiff (appellant) leased 50 acres to defendant Joe Flores for the crop season extending to December 15, 1949. The lease was subsequently extended to the entire 160 acre farm by oral agreement. It was understood that Flores had money coming to him from a source in California which would enable him to pay the expenses of operating the farm. This did not materialize and the plaintiff began advancing money to the tenant, and on July 16th had advanced approximately

$2300.00. On that date the tenant and his wife gave the plaintiff a note for $2500.00, due December 15, 1949, and secured by a mortgage on the crops. On the same day the tenant and his wife gave Harvey Iverson a mortgage on the crops to secure a bill for groceries, gas and oil in the amount of $435.62. The Iverson mortgage is expressly made subject to the lien of the landlord's mortgage. The plaintiff knew of the second mortgage at the time.

Thereafter, the plaintiff continued making advances to the tenant. There is a dispute in the evidence as to whether or not these subsequent advances were made with the knowledge and consent of the second mortgagee. Plaintiff testified that on an occasion late in July when he called at Iverson's service station he asked Iverson if he wanted to extend further credit to the tenant, and that Iverson said, "No, if you want to go ahead and finish the crop, go on." Plaintiff's wife in effect corroborated this statement. Mr. Iverson, equally emphatic, denied that any such conversation took place, and testified that he did not know of the continuing advances, although it was shown that a few of plaintiff's checks were cashed by the tenant at Iverson's place of business.

The tenant continued in the operation of the farm until about December 1st, when he moved to California. Some of the crops were still on the farm unmarketed at that time. In the meantime, the plaintiff had received from the proceeds of the tenant's share of crops sold, more than enough to pay the amount due on his mortgage. These payments, however, he testified he applied on advances made to the tenant subsequently to the mortgage—the tenant having given no direction as to the application to be made—and contends that the balance due him is secured by his first mortgage.

The remaining crops were sold by agreement between the parties, and the proceeds are held pending judgment. The amount realized is not sufficient to pay both.

The trial court found that after July 16th, with actual knowledge of the Iverson mortgage, the plaintiff continued to make advances to the tenant; that the advances were used in the operation of the premises, growing, raising and harvesting of the crops; that there is no evidence that Flores abandoned or neglected the crops, nor that the plaintiff took possession of the crops or the premises or the operation thereof. The court further found plaintiff's mortgage had been fully paid, and, in the judgment provided for payment of the amount due Iverson on his second mortgage with priority over plaintiff's claim for subsequent advances.

The ultimate question raised by the assignments is the claimed right of appellant to apply the payments made by the tenant out of the proceeds of the crops to the satisfaction of his unsecured claim for advances made subsequently to the chattel mortgages, thus leaving his mortgage an

unsatisfied lien on the remaining crops and proceeds with priority over the Iverson mortgage.

■ Generally, a debtor owing more than one obligation to the same creditor may direct upon which obligation payments shall be applied, and if he does not do so the creditor may make such application as he chooses. Smith v. Thomas, 42 Idaho 375, 245 P. 399; Home Owners Loan Corp. v. Stookey, 59 Idaho 267, 81 P.2d 1096; McCarty v. Sauer, 64 Idaho 748, 136 P.2d 742; 40 Am.Jur., Payment, § 117, p. 796. But, where a junior lienor has a valid claim against the fund, property, or assets out of which the payments are made, then they must be applied in such manner as to protect the rights of the junior lienholder, that is, to prior valid liens or claims against the same security. National Bank of Mont. v. Bingham, 91 Mont. 62, 5 P.2d 554; Ganley v. City of Pipestone, 154 Minn. 193, 191 N.W. 738; Continental Supply Co. v. Marshall, 10 Cir., 152 F.2d 300, certiorari denied, 327 U.S. 803, 66 S.Ct. 962, 90 L.Ed. 1028; 70 C.J.S., Payment, §§ 64, 78; 40 Am.Jur., Payment, § 123. Money necessarily expended by a senior lienholder for the protection and preservation of the common · security gives rise to such a valid prior claim with priority equal to the lien of the party incurring the expense. Stockyards National Bank v. Bragg, 67 Utah 60, 245 P. 966; Cedar v. W. E. Roche Fruit Co., 16 Wash.2d 625, 134 P.2d 437; Ganley v. City of Pipestone, 154 Minn. 193, 191 N.W. 738; 14 C.J.S., Chattel Mortgages, § 188. Accordingly it is held that if the tenant abandons or neglects the crop and the landlord or lienholder takes possession and incurs expenses in cultivating, harvesting and marketing it, he is entitled to reimbursement for such expenses as against the claim of a junior lienor. Exchange State Bank v. Farmers State Bank, 119 Kan. 70, 237 P. 936; Columbia Trust Co. v. Farmers' & Merchants' Bank, 82 Utah 117, 22 P.2d 164; Cedar v. W. E. Roche Fruit Co., Wash., supra; Cox v. Martin, 75 Miss. 229, 21 So. 611, 36 L.R.A. 800, 65 Am.St.Rep. 604; 14 C.J.S., Chattel Mortgages, § 301, p. 942.

■ The plaintiff contends that the subsequent advances made by him were necessary to enable the tenant to continue operations and to make and market the crop. The court did not find specifically on this question, but found only that the money advanced was used for that purpose. However, we may assume from the record that the tenant was unable to carry on without financial help, and in that sense the advances were necessary. Is such a showing sufficient? We think not. Neither the lease nor the first mortgage obligates the landlord to finance the tenant. Future advances are not mentioned in either instrument. Both provide that the landlord may oust the tenant and take possession of the property for breach of the contract. There was no showing that the tenant breached his contracts or that he neglected or abandoned

the crops. And the plaintiff did not take possession. Nor does the record show that he incurred the expenses himself in an effort to protect the crops because of any neglect or breach on the part of the tenant. He testified that when Flores was on hand he gave the money to him. When Flores wasn't around he paid the laborers directly. Under such circumstances the advances are regarded as "voluntary" and not "obligatory" and are not preferred as against the claim of a junior lienor. Nohrnberg v. Boley, 42 Idaho 48, 246 P. 12; Vollmer Clearwater Co. v. Union Warehouse & Supply Co., 43 Idaho 37, 248 P. 865; Farmers' etc. Bank v. Hartford Fire Ins. Co., 43 Idaho 222, 253 P. 379; Boise Payette Lbr. Co. v. Winward, 47 Idaho 485, 276 P. 971; Reidy v. Collins, 134 Cal.App. 713, 26 P.2d 712; Elmendorf-Anthony Co. v. Dunn, 10 Wash.2d 29, 116 P.2d 253, 138 A.L.R. 558; Heaton v. Slaten, 25 Ala.App. 81, 141 So. 267; 4 Pomeroy's Equity Juris. 5th Ed. § 1199; 59 C.J.S., Mortgages, § 230 a(2).

 Where as here the prior mortgagee does not contract to make advances the second mortgagee cannot be said to have consented to such advances becoming a prior lien by accepting a second mortgage expressly subject to the first, within the rule of Vollmer Clearwater Company, Ltd., v. Union Warehouse & Supply Company, Ltd., 43 Idaho 37, 248 P. 865. Nor do we think the conversation at Iverson's service station is sufficient for that purpose. An agreement to subordinate his claim, or facts or circumstances from which such an agreement might be implied, would seem necessary.

■ Appellant also assigns the failure of the court to allow him an attorney's fee. His note and mortgage having been fully satisfied and discharged by the application of the proceeds of the tenant's share of the crops, as found and required by the judgment of the court, no contractual basis remains for the allowance of an attorney's fee.

Judgment affirmed. Costs to respondent.

GIVENS, C. J., and PORTER, THOMAS and KEETON, JJ., concur.