WILSON *v.* MORSE MILL COMPANY.

5-696                                                   282 S. W. 2d 803

Opinion delivered October 17, 1955.

*Rex W. Perkins* and *E. J. Ball,* for appellant.

*Price Dickson* and *W. B. Putman,* for appellee.

SAM ROBINSON, Associate Justice. The principal issues here are whether one D. F. Keepers was an agent of appellant, G. W. Wilson, or an independent contractor, and whether a credit once applied to an open account can be changed to the detriment of a third party when such party is not consulted.

Appellant, Dr. G. W. Wilson, is a member of the School Board of the Greenland School District. At his own expense he had three buildings constructed for the school. The first structure was built in 1949 at a cost of $9,815.83; the second in 1950 at a cost of $7,596.93; and the third building was completed in 1952 at the cost of $45,170.41. Dr. Wilson employed D. F. Keepers to construct these buildings. After the last building was completed, there was owed to appellee, Morse Mill Company, $2,591.54 for material furnished on the job. Morse filed this suit for that amount against Dr. Wilson. Wilson contends that he is not liable because Keepers was an independent contractor, and further that, in any event, Morse cannot recover more than $1,197.28 because the account had been credited with $1,394.26 paid by Keepers

which was later canceled without the consent of Wilson. It is the contention of Morse that Keepers was Wilson's agent and that Wilson is liable for the entire amount. The cause was submitted to the court sitting as a jury and there was judgment for Morse Mill Company in the sum of $2,591.54. Dr. Wilson has appealed.

Whether Keepers was an independent contractor or an agent of Dr. Wilson's is a question of fact. A finding of fact by the trial court has the same force and effect as a jury verdict. *Gray* v. *Ford, Bacon & Davis, Inc.,* 210 Ark. 995, 198 S. W. 2d 508; *Harvell* v. *Matthews,* 189 Ark. 356, 72 S. W. 2d 214. The trial court's finding of fact when a jury is waived is considered conclusive and will not be reviewed if supported by any substantial evidence. *Wallis* v. *Stubblefield,* 216 Ark. 119, 225 S. W. 2d 322. This court gives evidence adduced on behalf of the prevailing party the strongest probative force it will reasonably bear. *Wall* v. *Robling,* 207 Ark. 987, 183 S. W. 2d 605. Here, there is substantial evidence to support the finding that Keepers was Wilson's agent. At the time of the trial of this cause Keepers had died, but by agreement of counsel the testimony he had given in a cause in the federal court, in which the government was seeking to recover social security taxes from Dr. Wilson, was admitted as evidence. According to this testimony, Keepers was acting in the capacity of Wilson's agent and not as an independent contractor. He testified that there was no contract between him and Wilson:

"Q. And you had no contract with him to build the building? A. No contract whatever. Q. How were you to be paid? A. Just as he paid me. Q. Did you draw a salary there, too? A. That's what I worked on all the way through—a salary. Q. By the hour? A. By the hour. Q. How much an hour? A. A dollar and a quarter an hour."

This is substantial testimony to the effect that Keepers was not an independent contractor and, even though we should find that the judgment is contrary to a pre-

ponderance of the evidence, we must affirm where there is substantial evidence to support the judgment.

Subsequent to the completion of the third building in 1952, Morse Mill Company rendered a statement to Dr. Wilson in the sum of $1,197.28, but later claimed that Wilson owed them $2,591.54. The change came about in this manner: Morse Mill Company was indebted to Keepers in the sum of $2,379.00. They paid this account by giving Keepers credit for that amount on the school job, but later they were directed by Keepers to credit $1,394.26 to another account Keepers owed to Morse. Morse then withdrew the credit from the school job and applied it to the other account. The question is, in these circumstances, could Morse legally void the credit given on the school job without the consent of Wilson.

In *National Surety Company* v. *Southern Lumber & Supply Company,* 181 Ark. 105, 24 S. W. 2d 964, the court said: "The exercise of the right of appropriation of payments belongs exclusively to the debtor and creditor, and no third person can control or be heard for the purpose of compelling a different appropriation from that agreed upon by them. But an appropriation by either party cannot afterward be changed so as to injuriously affect the rights of third persons." The account was carried on the books of the Morse Mill Company in the name of Keepers, but it is their contention that Wilson is primarily liable. There is evidence in this case to the effect that Keepers had not applied to the school building account all of the money furnished to him by Dr. Wilson for that purpose, and it is not beyond the range of possibility that Wilson could have compelled the application to the school account of all the money owed to Keepers by the Morse Company.

In *Smart, Administratrix,* v. *Owen,* 208 Ark. 662, 187 S. W. 2d 312, this court quoted with approval from 41 C. J. S. 792 as follows: "The parties may agree as to the application of a payment, and may, by agreement withdraw a payment once credited on the mortgage and apply it otherwise, provided no third person is prej-

udiced thereby.'' In this case, Dr. Wilson was certainly prejudiced when the credit of $1,394.26 on the school account was withdrawn, and this credit should be restored. Since the cause appears to have been fully developed, the judgment is reduced to $1,197.28 and, as modified, is affirmed.

Justices MILLWEE and GEORGE ROSE SMITH dissent.

GEORGE ROSE SMITH, J., dissenting. It seems to me that the majority's action in reducing Morse's judgment, by the amount of $1,394.26, is contrary to settled principles of law. A somewhat more detailed statement of the facts will make my position clear.

In 1952 Keepers did certain construction work for Morse, under an agreement by which Keepers was to furnish the labor and Morse was to furnish the material. Upon the completion of that project Morse owed Keepers $2,379 for the labor he had supplied. Needless to say, that money was owed to Keepers personally and was of no concern whatever to Dr. Wilson.

Instead of paying Keepers in cash Morse undertook to apply the $2,379 as a credit upon its books. At that time Keepers owed Morse about $1,400 upon a personal account of his own, and in addition there was a large unpaid balance for the construction of the third school building, the latter being referred to as the Greenland Gym job. In applying the credit of $2,379 Morse credited the entire amount to the Greenland Gym job. The trial court was warranted in believing from the evidence that Keepers knew nothing of this bookkeeping entry when it was made.

Upon the basis of this credit Morse sent Dr. Wilson a statement in the sum of $1,197.28. Wilson discussed the matter with Keepers; the trial court, as the trier of the facts, was at liberty to infer that Keepers then learned for the first time that the money due to him personally had been credited to the Greenland Gym job. Keepers got in touch with Morse and directed that part of the $2,379 be used to extinguish his personal indebted-

ness to Morse. Keepers undoubtedly was entitled to take this action, as it is familiar law that the debtor has the primary right to direct the application of payments. *Harrison* v. *First Nat. Bk. of Huntsville,* 117 Ark. 260, 174 S. W. 553. Conversely, Morse had no choice in the matter except to obey Keepers' instructions in the matter. All that happened was that Dr. Wilson, who is now found to have actually owed the Greenland Gym account, was temporarily given credit for money that belonged to some one else. This mere bookkeeping entry was promptly corrected, and it is not contended that Dr. Wilson in any way relied upon the error to his detriment.

For their conclusion the majority cite only the *National Surety Company* case and the *Smart* case. Neither case is relevant to this one except for the general statement that an appropriation of a payment, when made, cannot be changed to the prejudice of a third person. This rule has not the slightest application to the case at bar. To begin with, there was no appropriation until Keepers acted, as the right of appropriation belonged to him. In the second place, Dr. Wilson has not been prejudiced in any proper sense of the term. He was temporarily credited with money that belonged to Keepers alone—money to which Dr. Wilson had no present claim. Before Dr. Wilson changed his position in any respect the erroneous credit was properly withdrawn at Keepers' direction. If prejudice results from the deletion of a credit to which the debtor was never entitled, it obviously follows that in no instance can a mistake in a creditor's statement of account ever be corrected. Of course that is not the law, notwithstanding the majority opinion in this case.