TWIN CITY LINES, INC. *v.* COOK.

5-1018                                            291 S. W. 2d 810

Opinion delivered June 25, 1956.

*Harper, Harper & Young,* for appellant.

*Hardin, Barton, Hardin & Garner,* for appellee.

PAUL WARD, Associate Justice. Two main questions are presented by this appeal. One is the effect of a Motion for New Trial in connection with the appeal procedure under Act 555 of 1953 and the other is the sufficiency of the testimony to justify an instruction permitting recovery for permanent injury.

On January 30, 1955 appellee, Tressie Mae Cook, was injured while riding in a bus operated by appellant in the City of Fort Smith. No question is raised here as to appellant's liability for the injury, and there is little, if any, conflict in the testimony relating to the extent of the injury. There is however a dispute, later discussed, as to whether the testimony indicates a permanent injury.

On a complaint by Tressie Mae Cook alleging injury to her right knee and leg, a linear fracture through the neck of the femur of her right hip, resulting in hospitalization, an operation and consequent pain and suffering now and in the future, in which complaint her husband joined alleging the loss of the services and the consortium of his wife and that he had been caused to expend large sums of money for hospital, doctor and medical expenses and would have to continue to do so in the future,

the jury awarded a verdict in favor of Mrs. Cook in the amount of $10,000 and in favor of Mr. Cook in the amount of $2,000.

The trial court, among other instructions not here questioned, told the jury by Instruction No. 23 that it could, in awarding damages to Mrs. Cook, take into consideration "any pain or suffering which she may sustain or suffer at the present time or in the future" and "whether the injuries, if any, are temporary or permanent."

To the above instruction appellant at the time objected as follows: "We object specifically to the submission of the question of permanent disability or permanent loss. There is no proof that she will lose any earnings as a result of this in the future. The defendant specifically objects to the submitting of the issue of permanent disability or of loss of future earnings . . . for the reason that there is no proof that she will sustain any permanent diminishment of her earning capacity." THE COURT: "That is overruled and your exceptions saved."

*Motion for New Trial.* In taking this appeal appellant complied with all the requirements of the new procedure under Act 555 of 1953, and in addition thereto he filed a Motion for New Trial. In this motion, however, appellant made no mention of the court's alleged error in giving the instruction set forth above. Appellees insist that appellant cannot now be heard to complain of the alleged erroneous instruction for the reason that it was not carried forward in said motion. This procedural question is presented to this court for the first time, but to us it is clear that appellees' contention cannot be sustained. Section 11 of the aforementioned act states that: "No Motion for a New Trial and no assignment of errors shall be necessary." In lieu thereof said act provides, in Section 8, for a designation of proceedings and evidence to be contained in the record on appeal and, in Section 21, for the method of making known to the court the objections to its rulings. Under the rules recently adopted by this court the latter method is the standard

procedure for perfecting appeals. If appellant had made no motion for a new trial there could be no question about it having properly perfected its appeal and its right to urge error on the part of the court in giving the above mentioned instruction. It would be a strained construction of said Act 555 to hold that appellant is in a more disadvantageous position by having filed a defective motion for a new trial than he would have been in if he had filed no such motion at all. We therefore hold that appellant has properly raised the question of the propriety of the trial court's instruction above set forth.

*Sufficiency of the evidence.* Appellant strongly and ably urges that the record contains no evidence to justify the giving of Instruction No. 23. In support of this contention appellant quotes extensively from *Missouri Pacific Transportation Company* v. *Kinney,* 199 Ark. 512, 135 S. W. 2d 56, where this court in a somewhat similar situation, among other things, said: ''Before such a recovery can be allowed, the permanency of the injury must be made to appear from the evidence with reasonable certainty and that future pain and suffering are inevitable and if they appear to be only probable or uncertain they cannot be taken into the estimate.'' The same opinion quotes with approval from another decision this language: ''The testimony, viewed in the strongest light in favor of appellee, does not make it reasonably certain that Wharton Bird was permanently injured. Unless there is testimony tending to show with reasonable certainty that the injury is permanent, the court should not permit the jury to assess any damages for permanent injury.'' Appellant then, in attempting to show that the testimony in the case under consideration did not come up to the standard announced in the above quoted rules, sets out portions of the testimony of Dr. W. E. Knight who treated Mrs. Cook:

''Q. If I understand you correctly, doctor, there's nothing in Mrs. Cook's present medical picture that indicates anything to you except a perfect result. Is that right? ·

A. That is right.

Q. And this other possibility that you have described which you say occurs in a certain percentage of these cases, is purely speculative. Is that correct?

A. That's right.

Q. You find nothing in her condition to base an opinion that that might occur?

A. I don't expect it to happen to her.

Q. So there's nothing there to cause you to suspect it, is there?

A. No.

Q. But you would have to speculate as to whether she'd have any disability or not, wouldn't you?

A. That's very speculative; yes.

Q. And there's nothing in her present condition, or the studies you have made of her, to indicate that she will obtain anything other than a perfect result?

A. That's what we hope and expect.

Q. But wouldn't the answer to my question be that there's nothing there—

A. Mr. Harper, I can't answer that yes or no, because that woman deserves that, and any hip has to be watched that period of time.

Q. I understand that, doctor, but isn't it true that there's nothing there at present that you can see or detect that indicates anything but a perfect result?

A. That is right."

We have given careful consideration to the above quoted testimony and judicial announcements, and have reviewed the fact situation in the above cited opinion, but have reached the conclusion that other evidence and circumstances disclosed by the record justified the trial court in giving the instruction complained of. In viewing this case as a whole we must keep in mind we have

on numerous occasions announced the rule that on appeal the evidence must be viewed in the light most favorable to appellee and that we must give every deducible inference therefrom which the jury might have believed or accepted as true. In the recent case of *Wilson* v. *Morse Mill Company,* 225 Ark. 405, 282 S. W. 2d 803, this court reaffirmed the well established rule that ". . . we must affirm where there is substantial evidence to support the judgment," and we also said that: "This court gives evidence adduced on behalf of the prevailing party the strongest probative force it will reasonably bear."

Viewed under the above rules, there is in this record testimony from which the jury could have found: Mrs. Cook was injured on January 30, 1955 and suffered pain until she was admitted to the hospital on February 5, 1955 at which time she was placed in traction; Three days later an incision was made in her hip and a metal screw approximately 4 inches in length was inserted into her hip bone; She remained in the hospital until February 21, 1955 when she was allowed to return home; The incision did not heal properly and her hip was very tender and painful; On recommendation of her doctor that exercise might relieve the soreness she returned to her usual work as a waitress on June 27, 1955; By July 23, 1955, she had to discontinue work on account of severe pains and was so sick that she was unable to see a doctor until August 3, 1955; At that time she was given an injection to ease the pain and she resumed work from August 23 to September 18, 1955 when the pain again forced her to quit; In October she was again hospitalized and another incision was made in her hip when the screw was removed, and; On November 2, 1955, at the time of the trial, Mrs. Cook still walked with a decided limp because of the injured leg, the involved area was swollen, she was still experiencing pain, and she was unable to work. Dr. Knight testified that it would take at least 6 or 8 weeks for Mrs. Cook to recover completely from the surgery, and that for a period of from 3 to 5 years it would be necessary for her to be under the surveillance of a bone specialist and to be checked

every 6 months during that period of time. The doctor also stated that it would be necessary to take two x-ray pictures at each checking, at an average cost of $10 to $15 each; that his clinic would perform these services without additional charge since she was his patient, but that if she were forced to seek the services of another physician regular charges would be made. As to the permanency of Mrs. Cook's disability the doctor had this to say:

"A.   That's an impossible question to answer yes or no.   Anybody that has a broken hip even though they get perfect results, which we expect Mrs. Cook to get, it should be observed and watched, with serial x-rays for a period of three or even up to five years from the time of the injury, because a certain number of these hips lose their blood supply, and this head dies and two or three years afterwards, even though they've been walking on it with no limp, they will develop pain in the hip and we take an x-ray and find that this round ball, the head of the femur, has begun to disintegrate and get soft and flat.

Q.   What percentage of disability doctor, would she have, assuming the best result over this three to five year period you're talking about?

A.   That's another question that you can't absolutely put down in mathematical numbers, but I would say that if she got a perfect result, she would have at the very most not over 10% disability of that leg.   Now, that's not of the body as a whole but only to that leg."

From the above it is our conclusion that there is substantial evidence to justify the trial court's instruction herein complained of.

Appellant insists however, regardless of our views above expressed, that the judgments rendered in favor of appellees are excessive.   We are not persuaded by appellant's argument that, after deducting $1,000 for the 10% disability, the remaining $9,000 was excessive.   In the first place we have no way of knowing what portion of the judgment the jury awarded for permanent injury

**664**

and future pain and suffering. As we have said heretofore, there is no exact rule by which payment for suffering may be measured by a monetary standard. On the whole we cannot say that the verdict in her favor was excessive nor do we think the judgment for $2,000 in favor of Mr. Cook is excessive. Not only has he already been forced to expend approximately $1,000 for medical and hospital bills but there is a likelihood he may have to expend more in the future, and he has been deprived, and will in the future be deprived, of his wife's services.

Affirmed.