408 P.2d 753

John R. HELLER and Josephine Heller, Plaintiffs-Appellees,

v.

GATE CITY BUILDING AND LOAN ASSOCIATION, a corporation, Defendant-Appellant.

No. 7655.

Supreme Court of New Mexico.

Dec. 13, 1965.

William H. Darden, Raton, for appellant.

Robert S. Skinner, Raton, for appellees.

CHAVEZ, Justice.

Gate City Building and Loan Association, a corporation, appeals from a judgment which settled the priority of appellant's and appellees' respective mortgages.

On February 22, 1962, appellees, John R. Heller and Josephine Heller, filed their complaint against defendants, Thomas Stiveson, Jr. and Arvilla J. Stiveson, his wife, and Gate City Building and Loan Association, a corporation, in the district court of Colfax County, New Mexico.

The complaint sought to foreclose a mortgage deed executed by the individual defendants on August 3, 1956, upon certain real estate in Raton, New Mexico. All defendants answered, putting in issue most of the allegations of the complaint. The cause was tried by the court without a jury and judgment was entered settling the priorities between appellant and appellees of their respective mortgages. The trial court held that appellant's first mortgage was entitled to priority over the second mortgage of appellees, and that the second mortgage was entitled to priority over the advances made by appellant under the first mortgage. Appellant gave due notice of appeal. No appeal was taken by Thomas Stiveson, Jr. and his wife and they are not involved in the relative position of the parties on appeal.

On August 3, 1956, Thomas Stiveson, Jr. and his wife, purchased from appellees a home located upon certain real estate in Raton, New Mexico. The purchase price of said real estate and improvements was

$8,000. To pay for said property, defendants Stivesons borrowed from appellant $5,000 which appellees received. Stivesons then gave appellant a mortgage deed on the property purchased to secure the $5,000 loan.

In payment of the balance of $3,000, Stivesons gave appellees their promissory note for $3,000 and secured the payment by giving their mortgage deed to said real estate.

The mortgage deeds were given to appellees and appellant on August 3, 1956, and the mortgage to appellees contained a provision subordinating it to the mortgage given to appellant. Both mortgages were duly recorded, appellant's mortgage first, and appellant had actual and constructive notice of the second mortgage given to appellees.

Stivesons made payments totaling $325 on the indebtedness to appellees, then ceased making payments about July, 1957. Stivesons made payments to appellant until the time this suit was brought.

From time to time during the continuance of the transactions between Stivesons and appellant, at the request of Stivesons and under the terms of the mortgage so providing, appellant paid insurance premiums and taxes assessed against the mortgaged premises, which costs were duly charged to Stivesons. In addition, from time to time during this period, appellant made monetary advances to Stivesons, at their request, for interior remodeling of the house, remodeling and installation of a new heating unit, repair of the roof, and plumbing work. The trial court found that it was agreed between Stivesons and appellant that all advances made would be charged to their loan and would be repaid on the same terms as the promissory note, thereby extending the maturity date thereof, and would be secured by the mortgage deed from Stivesons to appellant. The total indebtedness, including the original loan and subsequent advances, was carried by appellant on one ledger sheet.

Appellant at no time advised appellees of the advances made to or on behalf of Stivesons, subsequent to the original promissory note, and appellees never agreed with appellant to subordinate their indebtedness to any of such advances.

In making payments on their indebtedness to appellant, Stivesons gave no directions as to how the payments should be appropriated on the indebtedness, and appellant credited them first to the interest due on the original indebtedness and all advances, and credited the balance of said payments to the general balance due as shown by their ledger sheet.

In view of the above facts, the problem before us is a question of the priority between appellant's first mortgage, appellees' purchase-money-second mortgage, and the subsequent advances made by appellant with

knowledge of appellees' second mortgage. The question is one of first impression in New Mexico.

The main question presented is under point III, wherein appellant contends that all advances made have priority over appellees' purchase-money-second mortgage. Appellant says that the advances made were authorized by paragraph Third of appellant's mortgage deed, wherein mortgagors (Stivesons) covenant and agree with appellant as follows:

"Third: To keep said premises in good condition and repair and permit no waste or deterioration, and in case of the neglect or refusal of the parties of the first part, to repair buildings or premises or to keep the same in good condition, the party of the second part, being hereby made the sole judge of the necessity therefor, then the said party of the second part, without notice to the parties of the first part, may enter or cause entry to be made, upon said property, and expend such sums as it may deem necessary for the repair of buildings, and such sums when so expended shall bear interest at the rate of eight per cent per annum and shall be immediately due and payable from the parties of the first part to the party of the second part and shall be secured by this mortgage. * * *"

The language of the above provision grants appellant an option to make repairs. Appellant is made the sole judge as to the necessity of the repairs and, in case the mortgagors (Stivesons) neglect or refuse to make repairs, appellant may enter said property and expend such sums as it deems necessary for the repairs of the buildings.

The rule is clear that a mortgage for a specific sum cannot be enlarged or extended to cover other debts or future advances, as against others who have acquired rights in the property. 1 Jones on Mortgages, 8th Ed., § 440, p. 563. See also, 59 C.J.S. Mortgages § 230a(1), p. 297; 36 Am.Jur., Mortgages, §§ 67, 68, pp. 722–723.

As to open end mortgages, or mortgages to secure future advances as they are sometimes called, in 1 Jones on Mortgages, 8th Ed., § 452, p. 583, we find the following statement:

"The early English decisions, and some authorities in this country, hold that a mortgage for future advances is a first lien on the property as to all advances secured by the mortgage, no matter when made, and this without reference to the question whether the mortgagee was obligated by contract to make further advances or whether he knew of the inferior lien. But the later English decisions and a majority of the cases in this country adhere to the rule that a subsequent lien will

**600**

take precedence over the mortgage as to all advances made after the mortgagee had notice of the prior incumbrance. * * *"

■ There is an overwhelming agreement among the courts in this country that a first mortgagee making future advances, which are optional and not obligatory under the first mortgage, with actual knowledge of an intervening lien, cannot obtain priority for subsequent advances over the intervening lien. Continental Supply Co. v. Marshall (D.C.W.D.Okl.1943), 52 F.Supp. 717, rev'd on other grounds, 10 Cir., 152 F.2d 300; Ashdown Hardware Co. v. Hughes, 223 Ark. 541, 267 S.W.2d 294; Goss v. Iverson, 72 Idaho 240, 238 P.2d 1151; Frank M. Ewing Co. v. Krafft Company, 222 Md. 21, 158 A.2d 654; Axel Newman Heating & Plumbing Co. v. Sauers, 234 Minn. 140, 47 N.W.2d 769; North v. J. W. McClintock, Inc., 208 Miss. 289, 44 So.2d 412; First Fed. Sav. & L. Ass'n v. Green-Acres Bldg. Corp., 38 Misc.2d 149, 236 N.Y.S.2d 1009; Housing Mortgage Corp. v. Allied Const., 374 Pa. 312, 97 A.2d 802; Elmendorf-Anthony Co. v. Dunn, 10 Wash.2d 29, 116 P.2d 253, 138 A.L.R. 558; 59 C.J.S. Mortgages § 230a(2), p. 297; 1 Jones on Mortgages, 8th Ed., §§ 452–454, pp. 583–588; 36 Am.Jur., Mortgages, § 234, p. 808.

In Superior Lumber Co. v. National Bank, 176 Ark. 300, 2 S.W.2d 1093, the court decided the precise question before us and stated:

"* * * Mortgages to secure future advances are valid; but, where it is entirely optional with the mortgagee whether to make future advances or not, advances made after notice of a subsequent incumbrance such as a lien for materials furnished are inferior to the materialman's lien. In other words, the general rule is that, if the amount for which the mortgage shall stand is wholly optional with the mortgagee, he cannot, after notice that a subsequent lien has attached, deplete the value of the equity to the disparagement of its lienors, by advances which, if refused, would not have been in force. * * *"

To the same effect see, National Bank of Eastern Arkansas v. Blankenship (D.C. E.D.Ark.1959), 177 F.Supp. 667, aff'd 8 Cir., 283 F.2d 574; Davis v. Carlisle (8 CCA 1905), 142 F. 106; Blaustein v. Aiello, 231 Md. 375, 190 A.2d 639.

We believe that the above cited cases pronounce the better rule. A contrary view would place an owner, who is unable to demand advances from the holder of the first mortgage, in the unfortunate position of also being unable to borrow on his property from another by reason of the possibility that, after the giving of a later mortgage to the latter, the holder of the prior mortgage might make advances to the own-

er, which would take priority over the claim of the second mortgage. Blaustein v. Aiello, supra.

 Under point I it is urged that the trial court erred in its conclusion of law No. 2 that:

> "2. The payments by the Stivesons upon their indebtedness to Gate City should be applied to the items of debt antecedently due, in the order of time in which they stand in the account."

Appellant argues that, in the absence of application of payments by either the debtor or creditor, the court should do so, and that as between secured and unsecured debts the general rule is that the court apply all payments to the unsecured debt first. Citing 70 C.J.S. Payment § 68, p. 272; 40 Am. Jur., Payment, § 135, p. 807.

The debts due appellant, however, were secured and were not unsecured debts. The trial court found it was agreed that all advances made to Stivesons by appellant would be charged to their loan and be repaid on the same terms as the original promissory note, thereby extending the maturity date thereof, and would be secured by the mortgage deed from Stivesons to appellant. This finding is not attacked here, thus it is the fact upon which the case rests on appeal and is binding on this court. Rone v. Calvary Baptist Church, Inc., 70 N.M. 465, 374 P.2d 847; Emmco Ins. Co. v. Walker, 57 N.M. 525, 260 P.2d 712.

We hold that all debts due appellant were secured and that the trial court properly applied all payments to the debts in the order of time.

We have considered appellant's point II and see nothing in it which would alter the conclusions reached above.

The judgment of the district court is affirmed.

It is so ordered.

MOISE and COMPTON, JJ., concur.