472 P.2d 643

The FARMERS AND STOCKMENS BANK OF CLAYTON, Clayton, New Mexico, a New Mexico Corporation, Plaintiff-Appellant,

v.

James MORROW, Jr., and James Morrow, Sr., Defendants-Appellees.

No. 9006.

Supreme Court of New Mexico.

July 27, 1970.

Krehbiel & Alsup, Clayton, for plaintiff-appellant.

Robert S. Skinner, Raton, for defendants-appellees.

## OPINION

TACKETT, Justice.

This action was commenced in the District Court of Union County, New Mexico, to recover on two promissory notes and to foreclose a mortgage. After trial without a jury, judgment was entered in favor of plaintiff "Bank" on the two notes against the defendant James Morrow, Jr., designated "Jimmy." The judgment denied foreclosure on the mortgage. The Bank appeals from the denial of the foreclosure.

The facts, briefly, as foun ̇ by the trial court, are as follows: On February 20, 1962, Jimmy owed the Bank $56,326.51. He was the owner of an undivided one-third ($\frac{1}{3}$d) interest in certain lands. A mortgage was given to the Bank covering the one-third interest, which secured the recited indebtedness until maturity five years later.

On June 13, 1962, Jimmy and his wife conveyed, by warranty deed, their interest in the land to James Morrow, Sr., designated "Morrow," who, at that time, did not know of the mortgage to the Bank. When the five-year period expired, the Bank and Jimmy executed an extension agreement renewing the mortgage. Thereafter, the two notes in this action were signed by Jimmy. In April 1962, Jimmy borrowed an additional sum of $30,475 from the Bank, which was secured by a security agreement on 264 head of cattle. This amount was repaid with interest in October 1962, though never credited on Jimmy's account at the Bank, but rather

was credited to an obligation owed the Commerce Agricultural Loan Company, designated "Loan Company." Here it is interesting to note that Rex Reeves was president of the Loan Company and also the Bank. The security agreement and mortgage were given to the Bank. After June 13, 1962, the Bank continued to loan additional sums of money to Jimmy.

The Bank relies on three points for reversal. Under points I and II, the Bank challenges the trial court's findings of fact Nos. 7 and 17, and conclusions of law Nos. 5, 6 and 4, flowing therefrom, as follows:

(Finding No. 7)

"From time to time after the execution of said collateral security agreement, the said James Morrow, Jr., borrowed additional sums of money from plaintiff, and executed promissory notes to plaintiff, as evidence thereof, all as more fully appears from Defendant's Exhibit 1 introduced in evidence in this cause."

(Conclusions Nos. 5 and 6)

"The making of additional loans to James Morrow, Jr., by the plaintiff, after it had knowledge of the conveyance to the defendant James Morrow, Sr., invalidated the collateral security agreement as to the said defendant James Morrow, Sr.

"The making of the extension agreement between the plaintiff and James Morrow, Jr., was invalid to extend the lien of the collateral security agreement to loans thereafter made, as against the defendant James Morrow, Sr."

(Finding No. 17)

"On October 23, 1962, the said James Morrow, Jr., paid to the plaintiff the sum of $31,395.30, to be applied upon the indebtedness owing from him to the plaintiff; the plaintiff failed to credit such sum to the account of the said James Morrow, Jr., secured by the collateral security agreement mentioned in Finding No. 4, and the land described therein."

(Conclusion No. 4)

"The defendant James Morrow, Sr., was prejudiced by the failure of the plaintiff to apply the proceeds of the cattle secured by plaintiff's loan to James Morrow, Jr., to that loan."

Under the Bank's point III, it alleges that:

"In Any Event, Defendant James Morrow, Sr., Could Not Have Been Prejudiced by the Actions of Plaintiff in Making Application of Payments."

▆▆ The transcript has been reviewed in its entirety and we hold that the challenged findings of fact and conclusions of law flowing therefrom have more than substantial support in the evidence. Thus, they will not be disturbed on appeal. Martinez v. Trujillo, 81 N.M. 382, 467 P.2d 398 (1970). Much of the argument concerning points I and II bears on the demeanor of the witness Reeves. The trial court is in a much better position to evaluate the demeanor of witnesses than are we, and we will not normally disturb that evaluation. Points I and II are ruled against the Bank.

▆ Point III, above mentioned, is ruled against the Bank, as the trial court concluded, and correctly so, that Morrow was prejudiced by the failure on the part of the Bank to apply the payments against the Bank's loan, which would have satisfied the Bank's mortgage on Jimmy's one-third interest in the land. By its finding No. 9, the trial court found that the Bank had actual and constructive knowledge of the warranty deed, prior to the extension agreement entered into between Jimmy and the Bank. The Bank has not challenged that finding on this appeal. Those findings of fact not challenged are accepted by this court and are deemed true and controlling. Trinidad Industrial Bank v. Romero, 81 N.M. 291, 466 P.2d 568 (1970). The court further concluded that the Bank became aware of the deed of conveyance to Morrow and continued to loan money to Jimmy. Morrow was in the position of a junior lien holder as to the lien of the

mortgage on the land, and he was certainly prejudiced by the failure of the Bank to apply the proceeds in such a way as to satisfy the Bank's loan, which was the basis of the mortgage. Heller v. Gate City Building and Loan Association, 75 N.M. 596, 408 P.2d 753 (1965); Conly v. Industrial Trust Co., 27 Del.Ch. 28, 29 A.2d 601 (1943); 59 C.J.S. Mortgages § 396c at p. 559; Annot. 76 A.L.R. 574, 586.

The judgment of the trial court is affirmed.

It is so ordered.

COMPTON, C. J., concurs.

WATSON, J., concurring specially.

WATSON, Justice (concurring specially).

I would add the following facts to those recited in the opinion:

The mortgage against the one-third interest in the lands (actually a security agreement) provided that the secured indebtedness might be increased or decreased from time to time. The loan for $30,475 was deemed by all parties as part of this "open-end" agreement with the Bank even though a separate security agreement on the cattle had been executed.

No contention was ever made by the parties that, after he acquired the deed, the position of James Morrow, Sr., to the Bank differed materially from that of the intervening lien holder in Heller v. Gate City Building & Loan Association, 75 N.M. 596, 408 P.2d 753 (1965). There we said:

"* * * [A] first mortgagee making future advances, which are optional and not obligatory under the first mortgage, with *actual knowledge* of an intervening lien, cannot obtain priority for subsequent advances over the intervening lien." (Emphasis added.) 75 N.M. at 600, 408 P.2d at 755.

The only finding by the trial court as to the Bank's actual knowledge of the Morrow deed was that it had such knowledge "prior to the extension agreement." There was no finding that any loans were made at the time of the extension agreement or afterward, or that the two notes here sued upon were not for loans made prior to the extension agreement. Thus, there are no findings to support Conclusions 5 and 6.

I agree that there was substantial evidence to support Finding 17. The $31,-395.30 was received from the sale of cattle pledged to the Bank for its loan. The down payment received on this sale had already been paid to the Bank and applied on the Bank's account with James Morrow, Jr., who testified that upon the receipt of the balance of the proceeds of the sale he mailed to Mr. Reeves at the Bank "a deposit on the cattle. The balance on the payment." I believe this is sufficient for the court to find that payment was made on the secured indebtedness. As in Schreiber v. Armstrong, 70 N.M. 419, 374 P.2d 297 (1962), appellant's theory of later ratification of the misapplication was not preserved for our review by requested findings and conclusions.

I agree that appellee James Morrow, Sr., was prejudiced by the failure to give credit for this payment on the loan for which his land was then pledged. Appellant contends under its Point III that the bank loan was actually reduced more by the application of the proceeds of a later sale of cattle pledged to the loan company than if the proceeds of the pledged assets had been strictly applied to the respective debts. This may be, but the $31,395.30 payment, once having been made to the Bank, immediately accrued to the benefit of the junior lien holder and could not be withdrawn to his detriment. In re McElmurray, 47 F.Supp. 15 (E.D. S.C. 1942); Wilson v. Morse Mill Company, 225 Ark. 405, 282 S.W.2d 803 (1955); First National Bank of Grand Haven v. Honeyman, 6 Dak. 275, 42 N.W. 771 (1889). Appellant did not question the crediting to the indebtedness at the Bank of the proceeds derived from the sale of cattle which had been given as security on an indebtedness to the loan company; therefore, this credit can only be considered as another proper

payment to the Bank. The credits of these payments being sufficient to discharge the lien of the mortgage as to James Morrow, Sr.'s, land, I concur in the affirmance on this ground alone.