733 P.2d 15

**AG–CHEM FARM SERVICES, INC., Plaintiff-Appellant,**

v.

**Dennis R. COBERLY, an individual d/b/a Coberly and Coberly, a partnership; Craig Coberly, an individual d/b/a Coberly and Coberly, a partnership; First National Bank of Woodbine, Iowa, a foreign banking corporation; Gerald Crozier, an individual d/b/a Crozier and Company; Crozier and Company, a New Mexico Corporation, and Worley Mills, Inc., Defendants-Appellees.**

No. 8331.

Court of Appeals of New Mexico.

Jan. 15, 1987.

Duane S. Hamar, Portales, for plaintiff-appellant.

Steve Doerr, Randy Knudson, Portales, for defendants-appellees, Gerald Crozier, Crozier & Company and Worley Mills, Inc.

## OPINION

GARNETT R. BURKS, Jr., District Judge (By Order of Designation).

Ag-Chem Farm Services, Inc. (Ag-Chem) brought this action to "foreclose" on a

security agreement and for money damages based on alleged conversion against two grain dealers, Worley Mills, Inc. (Worley Mills) and Gerald Crozier, an individual d/b/a Crozier and Company, and Crozier and Company, a corporation (Crozier). From an order and judgment granting summary judgment in favor of Worley Mills and Crozier, Ag-Chem appeals. The parties seem to agree that there are no factual disputes, and that the propriety of the summary judgment turns on the legal effect of the agreed facts. Neither the debtors, Coberly and Coberly, a partnership (Coberly) nor First National Bank of Woodbine, Iowa (First National) are parties to this appeal.

**UNDISPUTED FACTS**

On April 21, 1982, Coberly executed a promissory note in the sum of $94,709.78 to Ag-Chem. The consideration for the note was the balance owing Ag-Chem on an account for the sale of fertilizer to Coberly for use in its farming operation.

At the same time as the execution of the note, Ag-Chem, as the secured party, and Coberly, as the debtor, entered into a security agreement covering wheat on 1,500 acres to secure payment on the note. The security agreement, in addition to securing the payment of the note, by its terms and provisions, also secured the payment of "all other money" thereafter advanced by Ag-Chem to or for the account of Coberly. Ag-Chem's security interest was perfected by filing the security agreement on April 22, 1982.

On May 24, 1982, First National, by filing . a security agreement and financing statement, perfected a security interest in the same collateral covered by Ag-Chem's security interest, securing a debt owed First National by Coberly.

Early in June 1982, Coberly stored with Worley Mills some of the wheat covered by the security agreements of Ag-Chem and First National.

On June 10, 1982, Ag-Chem wrote Worley Mills informing it of Ag-Chem's note and security agreement and insisting that the note be satisfied before Worley Mills sold any wheat stored with it by Coberly.

Worley Mills was further informed that the total amount due Ag-Chem from Coberly was $94,709.78.

On June 18, 1982, Worley Mills drew a check on its account in the sum of $26,-774.40 payable to the order of Coberly and Ag-Chem. Ag-Chem endorsed this check and gave it to Coberly. It was either cashed or deposited in Coberly's account. Coberly gave back to Ag-Chem part of the check, and Ag-Chem permitted Coberly to keep the rest of the check to pay its labor and fuel expenses.

On June 24, 1982, Worley Mills drew another check on its account in the sum of $38,952.55 payable to the order of Coberly and Ag-Chem. Again, Ag-Chem endorsed this check and gave it to Coberly, and it was either cashed or deposited in Coberly's account. Coberly gave part of the second check back to Ag-Chem, and Ag-Chem permitted Coberly to keep the rest of the check to pay custom combiners.

On July 7, 1982, Worley Mills drew a third check on its account in the sum of $28,982.83 payable to the order of Coberly and Ag-Chem. It is not clear what happened to this third check, but we assume it was deposited in Ag-Chem's account.

The sum of the three checks totals the $94,709.78 that Ag-Chem informed Worley Mills was owed it by Coberly. However, by reason of its having permitted Coberly to keep part of the first two of said checks, Ag-Chem lacked $39,727.85 of having actually received the entire payment of $94,-709.78.

All three checks drawn by Worley Mills to the order of Coberly and Ag-Chem were from the proceeds of sales of part of the wheat Coberly stored with Worley Mills and covered by the security agreements of Ag-Chem and First National. On and after July 7, 1982, Worley Mills drew other checks from the proceeds of sales of other parts of Coberly's wheat from the 1,500 acres, and the other checks were paid to other creditors of Coberly.

In the summer of 1983, other wheat harvested by Coberly from the 1,500 acres was

stored with Crozier. Crozier paid the proceeds from sales of this wheat to First National.

At no time was a termination statement filed terminating Ag-Chem's security interest nor was its security interest in any other way released of record. The issues between Ag-Chem and Worley Mills and between Ag-Chem and Crozier are not the same and we will treat them separately. The issue between Ag-Chem and Worley Mills is whether Ag-Chem owed Worley Mills any duty to apply the entire sums of the checks drawn by Worley Mills to Coberly's note of April 21, 1982.

## 1. SUMMARY JUDGMENT FOR WORLEY MILLS

■ As between Ag-Chem and Coberly, those parties were free to apply the money from the checks given by Worley Mills in whatever way was mutually agreeable to them. *Schreiber v. Armstrong*, 70 N.M. 419, 374 P.2d 297 (1962); *In re American Gypsum Co.*, 36 B.R. 360 (Bkrtcy.D.N.M. 1984). However, the general rule that the debtor and the creditor may mutually direct the application of a payment is subject to the exception that when the creditor knows or is chargeable with knowledge of the source of the funds constituting the payment, and the rights of a third party are involved, the creditor is obligated to apply the payment so as to protect the rights of the party supplying the funds from which the payment is made. *Security Trust & Savings Bank v. June*, 38 Ariz. 513, 1 P.2d 970 (1931); *Cooper v. Sparrow*, 222 Ark. 385, 259 S.W.2d 496 (1953); *Reger Roofing & Siding Co. v. R & H Roofing & Supply Co.*, 582 S.W.2d 716 (Mo.App.1979); *Bain-Nicodemus, Inc. v. Bethay*, 40 Tenn. App. 487, 292 S.W.2d 234 (1953); *Hastings v. American General Insurance Co.*, 547 S.W.2d 360 (Tex.Civ.App.1977); *Ivers & Pond Piano Co. v. Peckham*, 29 Wis.2d 364, 139 N.W.2d 57 (1966).

■ None of the cases above cited, however, is precisely on point. Worley Mills had no interest of any kind in the wheat stored with it by Coberly. Neither was there any agreement under which Worley Mills was a surety for the payment of Coberly's note to Ag-Chem. Nevertheless, this case falls within the exception. By selling the wheat covered by Ag-Chem's security agreement, Worley Mills became secondarily liable for the payment of Coberly's note secured thereby in the sense that, if the note were not paid, Worley Mills would become liable for conversion of the wheat. Upon paying the proceeds from the sale of the wheat to Ag-Chem, Worley Mills had every right to expect that Ag-Chem would apply the entire payment in a way which would exonerate Worley Mills from any liability for such a conversion, and leave it free to use the proceeds from other sales of the wheat to pay other creditors of Coberly. Having failed to so apply the payment, Ag-Chem may not now assert against Worley Mills the very claim against which Ag-Chem was obligated to protect it. The district court was correct in granting summary judgment for Worley Mills.

## 2. SUMMARY JUDGMENT FOR CROZIER

■ The issue between Ag-Chem and Crozier is whether the security interest of Ag-Chem, securing the balance of $39,-727.85 remaining on the Coberly note after the partial application of the money received from Worley Mills, is prior to the security interest of First National. Most of the cases we have found bearing on this issue involve future advances. For this reason, we first decide whether Ag-Chem, by permitting Coberly to keep part of the money from the checks drawn by Worley Mills to pay some of its other creditors, made Coberly a future advance authorized by their security agreement, which would be secured by its security interest and which would be prior to the security interest of First National.

NMSA 1978, Section 55–9–204(3) (Cum. Supp.1986) provides: "Obligations covered by a security agreement may include future advances or other value whether or not the advances or value are given pursuant to commitment (Subsection (1) of Sec-

tion 9–105 [55–9–105(1) NMSA 1978])." We conclude that Ag-Chem did not make a future advance to Coberly. The "other value" embraced by the statute does not apply because "other value" was not provided for by Ag-Chem and Coberly in their security agreement. Neither did Ag-Chem make Coberly a future advance of "other money" within the meaning of their security agreement, since Ag-Chem did not advance any money so as to create a new debt. Ag-Chem merely failed to apply payments to a debt Coberly already owed it.

■ Even if we were to assume that Ag-Chem did make Coberly a future advance, such a future advance would not be secured by Ag-Chem's security agreement and, thus, be prior to the security interest of First National. Under Section 55–9–204(3) of the Uniform Commercial Code, it is generally held that, "[w]ith respect to third persons, future advances do not come within the protection of the future advance clause of the security agreement unless the future advance is of the same general class of debt as the original debt and was within the contemplation of the parties when the security agreement was made...." 8 R. Anderson, *Uniform Commercial Code*, § 9–204:31 (3d ed. 1985) (footnote omitted). *See, e.g., Kimbell Foods, Inc. v. Republic National Bank*, 557 F.2d 491 (5th Cir. 1977); *Kitmitto v. First Pennsylvania Bank, N.A.*, 518 F.Supp. 297 (E.D.Pa.1981); *Security National Bank & Trust Co. v. Dentsply Professional Plan*, 617 P.2d 1340 (Okl.1980); *John Miller Supply Co. v. Western State Bank*, 55 Wis.2d 385, 199 N.W.2d 161 (1972).

Although the original debt for fertilizer and the later debts for labor, fuel and custom combiners all fall within the same general classification of operating expenses, there is nothing in the record from which it can be reasonably inferred, nor do any of the parties contend, that a future advance out of the proceeds of a sale of part of the collateral was within the contemplation of either Ag-Chem or Coberly when their security agreement was made. We conclude that Ag-Chem did not make

Coberly a future advance which would be secured by its security interest and, thus, be prior in time to the security interest of First National.

Having decided that Ag-Chem's claimed priority cannot be upheld as a future advance, the issue remaining for decision is whether Ag-Chem owed First National any duty to apply the entire sums of money received from Worley Mills to Coberly's note of April 21, 1982.

Ag-Chem cites us to *Heller v. Gate City Building & Loan Association*, 75 N.M. 596, 408 P.2d 753 (1965), where the mortgagee under a first mortgage on real estate, with actual knowledge of a second mortgage on the same real estate, made a discretionary future advance pursuant to a clause in its mortgage providing that future advances were secured by the lien. It was held that the lien of the first mortgage was inferior to that of the second mortgage insofar as it secured the future advance, since the future advance was discretionary rather than obligatory. The rule in *Heller v. Gate City Building & Loan Association* was followed in *Farmers & Stockmens Bank of Clayton v. Morrow*, 81 N.M. 678, 472 P.2d 643 (1970), and was acknowledged in *House of Carpets, Inc. v. Mortgage Investment Co.*, 85 N.M. 560, 514 P.2d 611 (1973), but not followed since the future advances in that case were obligatory.

These cases are not applicable because, first, they involve real estate mortgages and, second, they involve future advances. Furthermore, the decision in *Heller v. Gate City Building & Loan Association* has been derogated by the enactment of NMSA 1978, Section 48–7–9 providing in substance that the lien of a mortgage on real estate securing future advances shall have priority from the time of recording as to all advances, whether obligatory or discretionary, made thereunder.

We have been unable to find a case from any jurisdiction decided under the Uniform Commercial Code which is similar to the case before us. The closest case we have been able to find at common law is *Goss v. Iverson*, 72 Idaho 240, 238 P.2d 1151 (1951).

There, plaintiff leased a farm to one Flores, and sometime later took a promissory note from Flores for money he had loaned him for operating expenses. The note was secured by a chattel mortgage on Flores' share of the crops. On the same day that plaintiff took the note and chattel mortgage, Flores gave defendant a chattel mortgage on his share of the same crops to secure a debt Flores owed defendant for groceries and other supplies. Defendant's chattel mortgage was expressly subordinated to the chattel mortgage given plaintiff. Plaintiff, with actual knowledge of defendant's chattel mortgage, subsequently advanced further sums to Flores for operating expenses. Neither plaintiff's chattel mortgage nor his lease with Flores provided for future advances. Thereafter, Flores abandoned the farm and plaintiff entered thereon and sold part of the crops. Flores' share of the proceeds was sufficient to pay plaintiff the amount Flores owed him under the note, but was not sufficient to fully pay him the amount due for the future advances. The proceeds from other sales of the crops were being held pending a decision in the case. It was held that as to the future advances, plaintiff's lien on the crops was inferior to defendant's lien.

█ We think the principle applied in *Goss v. Iverson* is applicable to the issue in this case in spite of the differences between the cases. In neither case, although for different reasons, is the issue of future advances relevant to the ultimate decision. The essential issue in both cases is whether the proceeds of a sale of part of the collateral should be applied to an unsecured debt to the prejudice of the holder of a subordinate security interest. A distinction between the cases is that, in *Goss v. Iverson,* plaintiff had actual knowledge of defendant's chattel mortgage when he made future advances. However, the Idaho court did not indicate in its opinion whether this fact was material to its decision.

Where a security agreement provides that it secures future advances, a party taking a subordinate security interest knows that his security interest will be subordinate to the prior security interest for any such advance. However, in this case, when First National took its subordinate security interest it had no reason to believe that any proceeds from a sale of part of the collateral would be applied to unsecured debts. For this reason, we think the constructive notice to Ag-Chem was sufficient to prevent it from prejudicing the rights of First National by permitting the proceeds from a sale of part of the collateral to be applied to unsecured debts.

We hold that a party having a prior security interest, who receives proceeds from a sale of part of the collateral with actual or constructive notice of subordinate security interests in the collateral, must apply all of such proceeds to the debt secured by his security interest so as to protect the remaining collateral for the benefit of parties having such subordinate security interests. Accordingly, Ag-Chem owed First National a duty to apply the money received from Worley Mills entirely to the Coberly note of April 21, 1982, and having failed to do so, Ag-Chem's security interest thereby became subordinate to the security interest of First National. To hold otherwise would enable unsecured creditors to share in proceeds from a sale of the collateral before parties having security interests are fully paid.

Ag-Chem maintains that it permitted Coberly to use part of the payment from Worley Mills to pay its operating expenses so that Coberly could stay in business and the chances would be increased of its eventually paying all of its creditors, including those having subordinate security interests in the wheat. This was not a decision Ag-Chem was entitled to make unilaterally without the agreement of other secured parties.

The security interest of Ag-Chem in the wheat stored with Crozier was subordinate to the security interest of First National. Thus, Crozier properly paid the proceeds from the sales to First National, and cannot be held liable to Ag-Chem for conversion. The district court's granting of summary judgment for Crozier was proper.

As to both Crozier and Worley Mills, Ag-Chem argues that Coberly's and Ag-Chem's endorsements on the checks cannot be construed as full payment to Ag-Chem except by their mutual agreement. This argument is answered by what has already been said. Ag-Chem had a duty to apply the payments so as to protect Crozier and Worley Mills, and Coberly had no right to interfere in such an application. Indeed, there is nothing in the record to indicate that Coberly ever attempted to interfere with the application of payments to its note with Ag-Chem. Had Coberly attempted to make its retaining part of the payments from the checks a condition of its endorsements, Ag-Chem could have asked Worley Mills to issue new checks payable to Ag-Chem only and, had Worley Mills refused, Ag-Chem could have filed an action to have the rights and duties of the parties judicially determined.

The summary judgment granted by the district court for Crozier and Worley Mills is affirmed. Ag-Chem is to pay the cost of appeal.

IT IS SO ORDERED.

BIVINS and GARCIA, JJ., concur.